**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**JAMES T. FARROW**                                              **PLAINTIFF**

**VERSUS**                                        **CASE NO. 1:05cv326LGJMR**

**SHERIFF GEORGE PAYNE, OFFICIALLY AND
IN HIS INDIVIDUAL CAPACITY; MAJOR WAYNE PAYNE,
OFFICIALLY AND IN HIS INDIVIDUAL CAPACITY,
CAPTAIN PHILLIP TAYLOR, OFFICIALLY AND
IN HIS INDIVIDUAL CAPACITY**

                                                               **DEFENDANTS**

STATE OF MISSISSIPPI
COUNTY OF HARRISON

## <u>AFFIDAVIT OF GEORGE PAYNE, JR.</u>

PERSONALLY CAME AND APPEARED BEFORE ME the undersigned authority in and for the County and State aforesaid, the within named, George Payne, Jr., who, after first being duly sworn by me on his oath, did depose and state the following:

1.  My name is George Payne, Jr. I am over the age of twenty-one (21) years. I have personal knowledge of the matters and facts contained in this Affidavit and I am competent to testify to the matters stated herein. I was, at all times relevant to the Complaint in this Civil Action, the duly elected Sheriff of Harrison County and the final policy making official for the Harrison County Sheriff's Office ("HCSO") and the Harrison County Adult Detention Center ("HCADC").

Page 1 of 4



EXHIBIT

tabbies®

"5"

2.      I had no communication, correspondence, personal interaction or contact with the Plaintiff in this case, James T. Farrow, at any time during the period of his incarceration at HCADC.

3.      At all relevant times it was the policy of HCADC to provide a safe and secure environment not only for inmates, but also for all officers and other employees of HCADC, and further to protect the general public by preventing any escapes from HCADC.

4.      Due to the nature and size of the Sheriff's Department and HCADC, I could not personally supervise all employees at one time; however, there were in place adequate policies and procedures to ensure all officers were supervised and acted in a lawful and professional manner and in compliance with the department's policies and procedures, general orders, and the laws of Mississippi. At all relevant times, a sufficient chain of command existed at the HCADC which enabled all officers to be adequately supervised. See Relevant Policies and Procedures collectively attached hereto as **Exhibit "1"**, including Code of Ethics and Use of Force for correctional officers.

5.      It was the policy of the HCADC to thoroughly investigate all allegations and complaints of misconduct and to take the appropriate disciplinary action if such allegations were ever sustained. At all relevant times, the Harrison County Sheriff's Department had a "Professional Standards Unit" policy in place and in full effect. See General Order No. 65, which is attached hereto as **Exhibit "2".** The Professional Standards Unit was responsible for

conducting internal administrative investigation and applicant background development.

6.    At all relevant times, it was also the policy of HCADC to provide appropriate training for all employees, including correctional officers as required by the laws of Mississippi. See Miss. Code Ann. § 45-4-1, et seq. At all relevant times, it was HCADC's policy to send newly hired correctional officers to complete an initial forty (40) hour training program by state certified officers prior to assuming duties in the jail.  Upon completion of this initial forty (40) hour program, correctional officers were to receive on the job training under the supervision of a field training officer, and an additional eighty (80) hours of instructional training, followed by refresher training provided throughout the course of the officer's employment. See HCADC policy regarding officer training, this specifically included training in handling inmate grievances and requests attached hereto as **Exhibit "3"**.  All of the named Defendants herein were trained according to these policies and procedures.  See Defendants', Taylor and Gaston-Riley, training records collectively attached hereto as **Exhibit "4"**.  Additionally, officers involved in the incident were trained in accordance with the Policies and Procedures. See training records of officers involved being Stolz, Necaise, Teel, Thomas, and Kelly collectively attached hereto as **Exhibit "5"**.  (Will supplement Lawson and Brawner)

7.    At all times, the HCADC, had in place adequate hiring, training and supervisory procedures for its deputies.

8.    At no time was I ever deliberately indifferent to any detainee's rights, including the Plaintiff's.

9.    All policies attached hereto represent polices and procedures which were in place and effect at the time of the subject incident.

Further, Affiant sayeth not.

_____
George Payne, Jr.

Sworn to and subscribed before me on this the 13th day of August, 2008.

_____
Notary Public

My Commission Expires:
_____
1/28/09

(SEAL)

*Harrison County Juvenile Detention Center*
*Policy & Procedure Directive*

## CODE OF ETHICS

**POLICY:**    It is the policy of the Juvenile Detention Center that all employees conduct themselves in a manner that creates and maintains respect for themselves as well as the Harrison County Juvenile Detention Center. In all their activities, personal and official, they should always be mindful of the high standards of behavior expected of them. Therefore, employees shall avoid any action(s) which might result in, or create the appearance of, affecting adversely the confidence of the public in the integrity of the Harrison County Juvenile Detention Center. It is expected that employees will discuss with their supervisors and/or superiors any problems arising in connection with matters within the scope of this policy.

**PROCEDURE:**

### I.    GENERAL INFORMATION

The Harrison County Sheriff's Department expects of its employees integrity and honesty, respect for the dignity and individuality of human beings and a commitment to professional and compassionate service. To this end, we will be guided by the following code of ethics:

1.    Employees shall respect and protect the civil and legal rights of all individuals.

2.    Employees shall treat every professional situation with concern for the welfare of the individuals involved and with no intent of personal gain.

3.    Employees shall maintain relationships with colleagues to promote mutual respect within the facility and improve the quality of service.

4.    Employees shall make no public criticism of their colleagues or their facility.

5.    Employees shall respect the importance of all disciplines within the criminal justice system and work to improve cooperation with each segment.



EXHIBIT

"1"

6.    Employees shall honor the public's right to information and share information with the public to the extent permitted by law subject to individuals' right to privacy.

7.    Employees shall respect and protect the right of the public to be safeguarded from criminal activity.

8.    Employees shall refrain from using their positions to secure personal privileges or advantages.

9.    Employees shall refrain from allowing personal interests to impair objectivity in the performance of duty while acting in an official capacity.

10.   Employees shall refrain from entering into any formal or informal activity or agreement which presents a conflict of interest or is inconsistent with the conscientious performance of duties.

11.   Employees shall refrain from accepting any gifts, service or favor that is or appears to be improper or implies an obligation inconsistent with the free and objective exercise of professional duties.

12.   Employees shall clearly differentiate between personal views/statements and views/statements/positions made on behalf of the facility or Sheriff's Department.

13.   Employees shall report to appropriate authorities any corrupt or unethical behaviors in which there is sufficient evidence to justify review.

14.   Employees shall refrain from discriminating against any individual because of race, gender, creed, national origin, religious affiliation, age, disability or any other type of prohibited discrimination.

15.   Employees shall preserve the integrity of private information; they shall refrain from seeking information on individuals beyond that which is necessary to implement responsibilities and perform their duties; employees shall refrain from revealing non-public information unless expressly authorized to do so.

16.   Administrators shall make all appointments, promotions and dismissals in accordance with established county policy, applicable contract agreements and individual merit rather than furtherance of personal interests.

_Riley_ _____          _6/3/02_ _____
Director of Corrections                  Effective Date

*Harrison County Adult Detention Center*
*Policy & Procedures Directives*

## <u>USE OF FORCE</u>

**Policy:**   Correction Officers assigned to duty on in the HCADC or HCWC will use force only when absolutely necessary, and when all other attempts to resolve the problem have failed. Officers will use the minimal force necessary to regain and/or maintain control of an inmate. Use of force is very clearly different from physical/corporal punishment, which is never permitted or authorized under any circumstances.

**Procedure:**   In order to give an inmate every opportunity to cease his or her disruptive or aggressive behavior and cooperate, the **Use of Force Theory** documented in **General Order #10, 4,** will be followed, excluding Deadly Force (i.e., within the confines of the Detention Center.)

I.   **General Information:**

**General Order #10, 4**

**Use of Force Theory:** Five categories of force applicable for corrections environment:

1)   Dialogue          2)   Escort Technique   3)   Pain Compliance
4)   Mechanical Control 5)   Impact Weapon

Physical force will only be used as a last resort to control inmates.

All Corrections Officers will be trained in the proper application of physical force techniques

II.   **Oleoresin Capsicum**

In the corrections environment, the use of Oleoresin Capsicum (O.C. Spray) may be used before or after Pain Compliance with any inmate who fails to comply with verbal orders and the inmate is yet uncontrollable. Only officers that are properly trained will be authorized use of O.C. Spray. Under no circumstances will O.C. Spray be sued on an inmate while in approved restraints or behind a locked cell door. The effects may mask or cover other medical conditions such

**EXHIBIT**

"1"

tabbies'

as allergies, heart conditions, lung problems, diabetes, amphetamines, barbiturates, PCP, opiates, heroin, or alcohol. Chemical agents like O.C. Spray are considered an intermediate use of force alternative.

**III.  Special Circumstances:**

In unique circumstances where verbal dialogue has failed or has proven to be impractical, staff may be forced to make a decision, such as whether to use force on a pregnant inmate or an aggressive inmate with open cuts, sores, or lesions. Special cases such as mentally ill, handicapped, or pregnant inmates must be carefully assessed by the Watch Commander or above, to determine whether the situation is critical enough to require the use of physical force.

**Pregnant Inmates –** When restraints become necessary for pregnant inmates, precautions to ensure the fetus is not harmed will be taken. Medical staff will be summoned immediately to decide whether the inmate's restraints are feasible for her condition or whether the inmate would be safer restrained in the medical area.

**Inmates with Wounds or Cuts –** Aggressive inmates with open cuts or wounds who have attempted to harm themselves or others should be carefully approached, with staff wearing protective gear.

**IV.  Medical Examination**

Medical staff will be immediately contacted to examine an inmate involved in an incident requiring use of force. An inmate's refusal or acceptance of an examination must be noted on the Use of Force Report. If injuries occurred, medical attention will be provided for the injured party. Force or restraint may be used when ordered by physician or his designee in order to allow medical staff to administer medical treatment deemed necessary. The force or restraint must be under the direct supervision of a physician and only when treatment is necessary to protect the health of other persons, as in the case of contagious disease or to protect the inmate against self-inflicted injury or death.

**V.  Clean-Up**

Any area where there is spillage of blood, or other body fluids, will be sanitized immediately upon the authorization of the Shift Supervisor or above. However, the supervisor must first make the determination whether there is need to preserve evidence. All blood and body secretions should be immediately removed and placed in an appropriate waste disposal container and the area washed with a disinfectant. In addition, any clothing that have been contaminated with these fluids, including the equipment and clothing of staff involved in the use of force, should be immediately disinfected or destroyed, as appropriate.

(Note: Assistance fro the Medical area will be sought to assure proper handling of hazardous waste)

## VI.  Documentation

Each officer involved will document force applied at any level on a Narrative Form.  Any officer viewing the use of force must write a narrative.  Complete narratives will be submitted to the Watch Commander at the conclusion of the shift.

**Use of Force Situations:**   It is generally recognized that Corrections Officers have a right to use force as it relates to five situations.

1. Self Defense:  Correctional Officers may use force in their self defense.

2. Defense of Third Party:  Correctional Officers may use force in the defense of a third person, including another staff person, an inmate, or a visitor.

3. Prevention of a Crime:  Correctional Officers may use force to prevent the commission of a crime within the facility.

4. Prevention of an Escape:  Correctional Officers may use force to prevent an escape.

5. Enforcement of Detention Rules:  Correctional Officers may use force in the environment of facility rules and regulations.

Force is intended to be used as a control measure when necessary.  It will not be used for punishment.  In the Use of Force Theory it is not required that an officer use the previous level on the continuum.  By necessity, the level of force needed is most often made based on a quick assessment of the potential danger of the situation and the resources available.  Typically the lowest level of force that will most quickly effect resolution and neutralize the danger is used.
**All control force must cease as soon as the inmate is subdued, restrained, or under control.**

## VII.  Deadly Force

Firearms will only be used as a last resort to prevent an escape, to prevent life threatening injury to a person, to prevent hostages from being taken or to quell a major disturbance.  A verbal order to stop must be issued before a shot is fired.  Firearms will not be discharged in any case where there is reason to believe that the life of an innocent bystander will be endangered.

Only employees with current certification will be allowed to carry firearms.  No Corrections Officers will carry firearms or weapons on his/her person, concealed

or not unless acting within the scope of official duties for the HCADC. Except in emergency situations, officers carrying firearms are assigned to perimeter.

## VIII. Staff Responsibility

Any employee of HCADC or HCWC who believes that a fellow employee is applying use of force in an unwarranted/excessive manner is legally, professionally, and morally obligated to make all efforts to intervene and stop the illegal or unwarranted action. If all such attempts fail, the employee should immediately report the problem to the Watch Commander. Such incidents should be fully documented by any/all witnessing employees. Failure to attempt to intervene, or failure to report and document such incidents can subject employees to the same disciplinary consequences and legal liabilities as the officer(s) who perpetrated that act.

_____
Warden

January 24, 2007
Effective Date

General Order #65
Harrison County Sheriff's Department
October 1,2002

George Payne, Jr, Sheriff

## PROFESSIONAL STANDARDS UNIT

1. **PURPOSE**

   The purpose of this order is to establish the policy for managing and staffing the Professional Standards Unit of the Harrison County Sheriff's Department. This policy will outline the procedures for investigating complaints of misconduct.

2. **SCOPE**

   This policy is directed to all department personnel.

3. **POLICY**

   The Harrison County Sheriff's Department Professional Standards Unit shall be responsible for conducting internal administrative investigations and applicant background development.

   This policy shall define the methods of investigation and discipline in order to ensure the protection of employees' rights through the conscientious investigation and ultimate disposition of each inquiry. This policy shall ensure the integrity of the department by establishing procedures that provide an investigation of any matter that might affect the efficient, professional operation of the department, and mandated compliance with all general orders.

   A. **Internal Investigations Authority**

      Internal inquiries and investigations are performed under the authority of the Sheriff. The Professional Standards Unit shall have the primary responsibility of investigating complaints of alleged employee misconduct. The Professional Standards Unit will operate under the supervision and direction of the Sheriff. All orders written or verbal issued in connection with any internal investigation shall be considered as direct orders from the Sheriff. The final authority to exonerate, declare unfounded, not sustained, or to sustain any complaint rests solely with the Sheriff. Internal inquiries are administrative and should not be construed as criminal investigations.

General Order #65 - October 1, 2002                                    1

EXHIBIT

tabbies

"2"

**B.  Disciplinary Review**

Members of the Professional Standards Unit may be required to attend  Disciplinary Review Hearings subsequent to internal investigations. The sole purpose will be to provide the facts and circumstances surrounding the respective cases.

**C.  Civil Service Meetings**

A representative of the Professional Standards Unit may be requested to attend regular or special civil service meetings for providing insight on disciplinary actions occurring inside the department. The representative's responsibility is solely to inform the Civil Service Commissioners of results of particular investigations.

**D.  PSU Area of Investigative Responsibility**

The Professional Standards Unit will investigate serious or sensitive allegations of misconduct and incidents resulting in actual or potential litigation against the county, the Sheriff's Department or employees of the Sheriff's Department. Any such investigation shall be performed under the guidelines of appropriate county policies and Mississippi Statutes.

## Legal Action

The Professional Standards Unit may investigate any pending legal action against the department or it's employees. Upon receipt of such information, a case file will be established which will contain all pertinent information on the action and any request for information.

**E.  Shift Supervisor Area of Responsibility**

The appropriate immediate supervisor will investigate complaints of less serious violations. This assignment shall not relieve the Professional Standards Unit from lending assistance when requested or monitoring the investigation.

The Supervisor receiving an external complaint or filing an internal complaint is responsible for preserving evidence to include taking documentary photographs when practical and possible. The Supervisor shall take photographs of complainants in all excessive force complaints even if injuries are not visibly present.

General Order #65 – October  1, 2002                                    2

**F. Complaints:**

_**All external complaints will be documented on a Citizen Complaint Form.**_
**Complaints may be received in a variety of ways including, but not limited to: (a) in person (b) by mail (c) telephone (d) email (e) third party** _Anonymous complaints are investigated, but have limitations caused by the inaccessibility of the complainant._

**Procedure for Citizen Inquiry**

A citizen alleging misconduct on the part of any employee shall be directed to the supervisor on duty regardless of the time of day. The supervisor may be able to resolve the complaint without the assistance of the Professional Standards Unit. Many complaints of alleged misconduct can be handled by the Shift Commander or a supervisor, provided it is done in a professional and timely manner. Unless the complaint involves gross misconduct or a criminal violation, the Shift Commander or supervisor should make every attempt to resolve the matter without involving the Professional Standards Unit.

If the shift supervisor cannot resolve the complaint satisfactorily or there is an allegation of a criminal nature, the shift supervisor shall complete the Citizen Complaint Report and forward this form to the Professional Standards Unit without delay.

In the event a citizen directly contacts the Professional Standards Unit when initially registering the complaint, the Professional Standards Unit will be responsible for referring the complaint to the affected supervisor or completing the Citizen's Complaint Report and other necessary documentation.

**Traffic Citations/ Arrests**

Complaints relative to differences of opinion between an officer and a citizen over the issuance of a traffic citation or regarding guilt or innocence subsequent to an arrest, shall not be investigated by the Professional Standards Unit, but will be properly handled by the judicial system.

**G. Use of Citizen Complaint Report**

1. Personnel receiving the complaint shall have the citizen sign the Citizen Complaint Report in their presence. The substance of the complaint shall be documented in the appropriate section of this form.

General Order #65 – October 1, 2002                                    3

2. Under no circumstances shall the Citizen Complaint Report be used as a means to threaten, intimidate, harass or discourage a citizen from making a complaint.

3. Should the citizen refuse to sign the complaint report, the receiving supervisor shall complete the report and document the refusal to sign. A memorandum concerning the allegations shall also be made. The report shall be signed in the space provided for supervisor receiving the complaint. The completed report shall be forwarded to the Professional Standards Unit without delay.

## H. Internal Complaint Procedure

In furtherance of the intent of this policy, any employee may submit a written statement, documenting employee misconduct, directly to the Professional Standards Unit which shall process the complaint in accordance with this general order.

## I. Written Counseling Form

Written Counseling Forms shall be utilized to document an employee's unsatisfactory performance or to document an incident involving employees. Written Counseling Forms in some cases shall serve as a written consultation. A copy of all the internal complaints or incidents shall be forwarded to the Professional Standards Unit.

If the supervisor believes the complaint, either external or internal, is of such a serious nature that it requires immediate attention, or he needs assistance, he shall contact the Sheriff or the appropriate Director within his chain of command, who shall determine if the complaint requires immediate assistance or the assignment of personnel from the Professional Standards Unit. If the appropriate Director deems that the complaint should be investigated by the Professional Standards Unit, the Director shall make the request to the Sheriff.

## J. Initial Investigation Procedures

1. Upon receipt of the documentation and approval of the Sheriff, the Professional Standards Unit shall determine which general order(s), policies or statutes were violated.

2. Should a formal investigation be ordered, an *Initial Notice of Inquiry Report* shall be drafted and forwarded to the affected employee through the chain of command, except under the following circumstances:

    (a) The alleged violation is ongoing.
    (b) The investigation possibly would be compromised by the release of the information.

General Order #65 - October 1, 2002                                    4

3. Garrity warnings shall be given to employees and signed prior to all formal interviews whereby the possibility of criminal conduct may be alleged. When there is no criminal conduct alleged, employees interviewed by the Professional Standards Unit will be advised of the authority of the investigation as well as requirements of complete truthfulness and candor. This will be documented on an audio recording tape.

K. Classification of Allegations

The Professional Standards Unit investigator shall, in the Internal Investigative Report, recommend 1 of the following 5 classifications:

1. Unfounded- the allegation is false or not factual.

2. Exonerated- the incident occurred, but was lawful and proper.

3. Not Sustained- there was insufficient evidence to prove or disprove the allegation.

4. Sustained- the allegation is supported by a preponderance of evidence to justify a reasonable conclusion that the incident did occur.

5. Policy Failure- the policy was not specific or did not cover this incident.

L. Internal Investigations

1. Internal Complaints will be assigned an IA# by the Professional Standards Unit OIC.

2. The complaint will then be assigned to a Professional Standards Unit Investigator by the OIC.

Each internal investigative report will contain:

1. The general order(s) violated.
2. The details in chronological order, addressing each point of accusation.
3. A synopsis of each witness statement.
4. Mitigating circumstances, if appropriate.
5. Recommended classification of the allegations

M. Case File Preparation:

*Unless special circumstances occur, all internal investigations must be completed within thirty days. An extension may be given by the Professional Standards Unit OIC or the Sheriff.*

General Order #65 - October 1, 2002                                    5

Each case file and report will contain the site or copies of the general orders violated. In addition, each case file will include letters and memos relevant to the investigation. All reports must include an investigator's finding and conclusions. Findings and conclusions should be a summary listing of relevant conclusions drawn by the investigator based on facts and circumstances of the investigation and a recommended classification of the allegations shall be provided by the Investigator. The Professional Standards Unit shall not make any recommendations regarding disciplinary action. All Garrity statements, including audio or video tapes of such interviews, must be filed separately from the investigative file in an envelope marked "Garrity statement" and filed accordingly.

N. Dispositions

1. Informal Personnel Actions- Actions documented on a Written Counseling Form shall be processed by forwarding a copy of the Written Counseling Form to the Professional Standards Unit for record.

2. Formal Discipline- A copy of the Formal Discipline Report, (letter of suspension, termination, etc.) shall be maintained in the affected employee's personnel file as defined in the department General Orders and a copy to be maintained in the Professional Standards Unit file.

O. Corrective Actions

1. Informal Personnel Action- When practical informal actions should be positive and educational rather than punitive in nature. The employee's immediate supervisor will complete all informal personnel actions.

2. Formal Discipline- Construed to be punitive in nature. It includes, but shall not be limited to:

    (a) Written Reprimand
    (b) Demotion
    (c) Suspension
    (d) Termination

P. Procedural Due Process

1. Prior to awarding any level of informal personnel action or formal discipline, the recommending authority may contact the Professional Standards Unit in order to determine the record of the offending employee and the consistent level of personnel action or discipline for the violation.

General Order #65 - October 1, 2002        6

2. **Required Actions-** The following steps will be taken to ensure due process:

   (a) The employee must be informed of the charge(s) against him/her.
   (b) The employee must be given an explanation of the evidence underlying the charge(s).
   (c) The employee must have the opportunity to respond to the charge(s).
   (d) All notices and hearings must be done in a meaningful time and a meaningful fashion.

If the internal investigation classifies the case as either exonerated, not sustained, unfounded or policy failure, the employee(s) involved will receive a letter of disposition.

Q. **Reviews, Appeals and Grievances**

All appeals and grievances shall follow procedures herein and established by the Harrison County Civil Service Commission and Department Policy. The Sheriff and all Division OIC personnel may review all informal and formal personnel actions.

**Obstruction of Internal Investigation**

No employee shall by writing, speaking, utterance or any other means commit an act which would hinder or obstruct an authorized internal investigation by the Harrison County Sheriff's Department.

**Confidentiality of Investigations**

All complaints and complaint investigations will be confidential and will not be discussed within or outside the department without approval of the Sheriff or his designee.

**Unauthorized Internal Investigation**

No employee shall initiate, conduct, or otherwise participate in any unauthorized investigation.

**Other Administrative Investigations**

Officer Involved Shootings

The Harrison County District Attorney's Office shall be responsible for conducting an independent investigation of all shootings involving officers of the Harrison County Sheriff's Department. The Sheriff may request other independent investigations by the Mississippi Highway Safety Patrol or other law enforcement agencies. The Harrison County Sheriff's Department Professional Standards Unit will conduct all internal investigations.

General Order #65 - October 1, 2002                                    7

## Background Investigations

Background investigations of applicants including sworn, non-sworn and reserves, will be conducted by the Professional Standards Unit. A background investigation by the Professional Standards Unit may be requested by any Director when the Director is informed of a need to begin the hiring process of applicants. The PSU investigator will be given a checklist of needed information, and the items on the list will be noted as to time and date of completion. Upon completion of the investigation the application will be returned to the personnel officer with a cover sheet indicating whether or not the applicant passed the background process. In addition, a copy of the cover sheet will be forwarded to the Sheriff and the affected Director. Without the approval of the Sheriff, applicants shall not be offered employment until after a satisfactory background investigation has been completed and it is determined that the candidate is suitable for the position which he/she has applied.

*Harrison County Adult Detention Center*
*Policy & Procedure Directive*

## TRAINING PLANS

**POLICY:**     The Harrison County Adult Detention Center will establish and maintain a training program and training coordinator to facilitate appropriate training levels for all employees of the Harrison County Adult Detention Center.  This program will incorporate both basic recruit and in-service training for employees.

**PROCEDURE:**

## I. GENERAL INFORMATION

A.  The Harrison County Adult Detention Center Officer Training Programs and trainer qualifications are governed by the Minimum Standards Board on Jail Officers Standards and Training, the Harrison County Sheriff's Department and ACA standards.  The training plan will be reviewed annually.

B.  All Training Coordinators will meet or exceed Harrison County Sheriff's Department requirements.

C.  Training curriculum will meet or exceed Minimum Standards requirements.

D.  An Advisory Committee will be established which will meet quarterly to review the Unit Training Program.  The committee will be chaired by the Services Captain and will consist of representatives from various departments.  Written reports from these meetings will be forwarded to the Harrison County Adult Detention Center Administrator.

E.  The Training Advisory Committee will conduct an ongoing formal evaluation and assess the pre-service, in-service and specialized training programs and will submit a written report to the Harrison County Adult Detention Center Administrator for appropriate changes in the annual training plan.  The training plan is developed, evaluated and updated based on these assessments that identify current job related training needs.

F.  Whenever possible, these training programs will be conducted by Training Academy or Sheriff's Department Staff.

**EXHIBIT**

**"3"**

G.  Facilities and equipment for classroom training programs will be available on site at the Harrison County Adult Detention Center.  The equipment and training programs will be located in an area that will provide isolation from other employees and from inmates.  Alternate sites will be selected to best accommodate small or large classes. Facilities for physical training, firearms and chemical agents will be located at or off the facility and will conform to the same requirements as the classroom programs.

H.  Employees who are designated as non-exempt will be paid in accordance with facility policy for time spent in training programs authorized by the Facility Administration.  Per diem and travel expenses will be paid to any employees to be away from home overnight or where the use of privately owned vehicles has been authorized by the Harrison County Adult Detention Center Administration.  Funds will also be available to reimburse staff who attend training during off duty hours.

I.  All new correctional officers will receive a minimum of forty (40) hours of training/orientation prior to being assigned to a particular job.  This orientation/training will include, at a minimum, orientation to the purpose, goals, policies, and procedures of the institution and Harrison County Sheriff's Department; working conditions and regulations, responsibilities and rights of employees; and an overview of the correctional field.  The orientation/training should included some preparatory instruction related to a particular job assignment.  Upon assignment to a post new employees will be assigned to a Field Training Officer.

J.  Correctional Officers assigned to a specialized unit must have one (1) year experience as a Correctional Officer and at least 40 hours of training before being assigned.  At least 16 of the 40 hours annual training must be pertaining to the specialized unit assignments. Emergency unit members shall receive training in and maintain certification in PPCT, Chemical Agents, First Aid/CPR and Firearms.

K.  Correctional Officers, in addition to the 40 hour orientation training, will receive 80 hours of basic correctional training.  In addition, all Correctional Officers will receive the required amount of in-service training each subsequent year of employment.

L.  All Clerical/Support employees will receive a minimum of sixteen (16) hours of training during the first year of employment and sixteen (16) hours of training each year thereafter.

M.  All support employees and professional specialists who have regular or daily inmate contact will receive a minimum of forty (40) hour of training during their first year of employment and forty (40) hours of training each year thereafter (e.g. Food Service, Industrial Supervisors, Case Managers, Chaplains, Teacher, Medical Personnel, Volunteers, Recreation Specialist).

N.  All Harrison County Adult Detention Center administrative and managerial staff will receive a minimum of forty (40) hours of training during their first year of employment and forty (40) hours of training each year thereafter.   This training should include, at a minimum, General Management, Labor Law; Employee Management Relations, elements of the Criminal Justice System; relationships with other service agencies.

O.  The Training Coordinator will give all part-time employees and contract personnel a formal orientation appropriate to their assignments and any additional training as determined by Harrison County Sheriff's Department Rules, applicable court orders, Mississippi State Law and Facility Administration.

P.  Prior to assignment to a post involving possible use of firearm, all personnel authorized to use firearms will be trained in the use, safety, care and constraints involved in the use of firearms.  All personnel authorized to use firearms will be required to demonstrate competency annually.

Q.  All employees of the Harrison County Adult Detention Center will be encouraged to continue their education.  Administrative leave and/or reimbursement is available for employees attending approved meetings. Seminars or work related activities.  Efforts will be made to coordinate all employees' educational activities with institutional requirements.

R.  All personnel who work with inmates will receive sufficient training so that they are thoroughly familiar with the rules of inmate conduct, the rationale for the rules and the sanctions available.

S.  On the job training will be provided to all full-time employees during their probationary period.

_Riley_
Facility Administrator

_6/3/02_
Effective Date

Case 1:05-cv-01426-LG-JMR Document 2 Filed 08/14/08 Page 22 of 42

10-7-04

# HARRISON COUNTY SHERIFF'S DEPARTMENT
## FIREARMS QUALIFICATION & TRAINING

DATE: 9/29/04    TIME IN: 1415    TIME OUT: _____

### OFFICER INFORMATION

LAST NAME: Taylor    FIRST NAME: Phil    MI: L.

EMPLOYEE ID # OR LAST 4 OF SS#: 8481    PHONE #: (228) 896-3000

ADDRESS: 22250 Blackwell Rd.    CITY: Saucier    STATE/ZIP: MS.

AGENCY NAME IF OTHER THAN HCSD _____    HCSD DIVISON _____

EQUIPMENT ISSUED: ✓ EYE PROTECTION    ✓ EAR PROTECTION    OTHER (EXPLAIN) _____

### DUTY WEAPON QUALIFICATIONS AND TRAINING

WEAPON MAKE: Glock    MODEL: 22    CALIBRE: 40

SERIAL #: EUB780    BARREL LENGTH (revolver only) ___    ISSUED YES ✓ NO ___

68 RDS (55out of 68 hits anywhere on silhouette )    PASS ✓ FAIL___    INSTRUCTOR INT. & BDG.#: 404 DTM

1st fire: 65    1st Re-fire: ___    2nd Re-fire: ___    3rd Re-fire: ___.

COMMENTS _____

### SHOTGUN

WEAPON MAKE _____    MODEL _____    SERIAL # _____

ISSUED ___ YES ___ NO    INSTRUCTORS INITIALS & BDG.# _____

5 SLUG (8 OUT OF 10 pts) ___ PASS ___ FAIL    5 OOB (72 OUT OF 90 pts) ___ PASS ___ FAIL

COMMENTS _____

### OFF DUTY / BACKUP WEAPON

WEAPON MAKE _____    MODEL _____    SERIAL # _____    CAL. ___

30 ROUNDS (24 OUT OF 30) ___ PASS ___ FAIL    INSTRUCTORS INITIALS & BDG.# _____

COMMENTS _____

### TACTICAL TRAINING

HITS ___ OUT OF ___    TIME ___ PASS ___ FAIL

PASS ___ FAIL ___    INSTRUCTORS INITIALS & BDG.# _____

COMMENTS _____

Comments above are n___ ___ personnel files. The comments are for Firearms Instructor ___e in future training needs

**EXHIBIT**

"4"

to Exh "5"

# HARRISON COUNTY SHERIFF'S DEPARTMENT
# FIREARMS QUALIFICATION & TRAINING

DATE: **5/12/04**   TIME IN **1308**   TIME OUT **1400**

## OFFICER INFORMATION

LAST NAME **Taylor**   FIRST NAME **Phil**   MI **L.**

DATE OF BIRTH **10/11/64**   PHONE # **(228) 896-3000**

ADDRESS **22250 Blackwell Rd**   CITY **Saucier**   STATE/ZIP **39574**

AGENCY NAME IF OTHER THAN HCSD _____   HCSD DIVISON **Corrections (Jail)**

## DUTY WEAPON QUALIFICATIONS AND 30 ROUND TRAINING

WEAPON MAKE **Glock**   MODEL **40 22**   CALIBRE **40**

SERIAL # **1EU B78 0US**   BARREL LENGTH (revolver only) _____ ISSUED **X** YES ____ NO

80 RDS (320 out of 400 points) 80%   PASS **✓** FAIL ____   INSTRUCTOR INT. & BDG.# **RMC**

1ˢᵗ fire **340**   1ˢᵗ Re-fire _____   2ⁿᵈ Re-fire _____   3ʳᵈ Re-fire _____.

COMMENTS   Officer was issued 50 rounds of duty ammunition.

## SHOTGUN

WEAPON MAKE _____   MODEL _____   SERIAL # _____

ISSUED _____ YES _____ NO   INSTRUCTORS INTIALS & BDG.# _____

5 SLUG (8 OUT OF 10 pts) _____ PASS _____ FAIL   5 OOB (72 OUT OF 90 pts) _____ PASS _____ FAIL

COMMENTS _____

## OFF DUTY / BACKUP WEAPON

WEAPON MAKE _____   MODEL _____   SERIAL # _____   CAL. _____

30 ROUNDS (120 OUT OF 150) _____ PASS _____ FAIL   INSTRUCTORS INITIALS & BDG.# _____

COMMENTS _____

## TACTICAL TRAINING

HITS _____ OUT OF _____   TIME _____ PASS _____ FAIL _____

PASS _____ FAIL _____   INSTRUCTORS INITIALS & BDG.# _____

COMMENTS _____
_____

10-7-04

# HARRISON COUNTY SHERIFF'S DEPARTMENT
# FIREARMS QUALIFICATION & TRAINING

DATE: 5/12/04    TIME IN 1308    TIME OUT 1400

## OFFICER INFORMATION

LAST NAME _Taylor_    FIRST NAME _Phil_    MI _L._

DATE OF BIRTH _10/11/64_    PHONE # (228) 896-3000

ADDRESS _22250 Blackwell Rd_    CITY _Saucier_    STATE/ZIP _39574_

AGENCY NAME IF OTHER THAN HCSD _____    HCSD DIVISON _Corrections (Jail)_

## DUTY WEAPON QUALIFICATIONS AND 30 ROUND TRAINING

WEAPON MAKE _Glock_    MODEL _22_    CALIBRE _40_

SERIAL # _1EU B78 OUS_    BARREL LENGTH (revolver only) _____ ISSUED _X_ YES ___ NO

80 RDS (320 out of 400 points) 80%    PASS ✓    FAIL ___    INSTRUCTOR INT. & BDG.# _RMC_

1st fire _340_    1st Re-fire _____    2nd Re-fire _____    3rd Re-fire _____.

COMMENTS    Officer was issued 50 rounds of duty ammunition.

## SHOTGUN

WEAPON MAKE _____    MODEL _____    SERIAL # _____

ISSUED ____ YES ____ NO    INSTRUCTORS INITIALS & BDG.# _____

5 SLUG (8 OUT OF 10 pts) ____ PASS ____ FAIL    5 OOB (72 OUT OF 90 pts) ____ PASS ____ FAIL

COMMENTS _____

## OFF DUTY / BACKUP WEAPON

WEAPON MAKE _____    MODEL _____    SERIAL # _____    CAL. _____

30 ROUNDS (120 OUT OF 150) ____ PASS ____ FAIL    INSTRUCTORS INITIALS & BDG.# _____

COMMENTS _____

## TACTICAL TRAINING

HITS _____ OUT OF _____    TIME _____ PASS _____ FAIL _____

PASS _____ FAIL _____    INSTRUCTORS INITIALS & BDG.# _____

COMMENTS _____

Comments above are not for personnel files. The comments are for Firearms Instructors use future training needs only.

## HARRISON COUNTY SHERIFF'S DEPARTMENT
## FIREARMS QUALIFICATION/RANGE TRAINING

DATE: _5-12-2000_    TIME IN: _1600_    TIME OUT: _____

LAST NAME _Taylor_    FIRST NAME _Phil_    MI _L._

SSN _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_    PHONE _(228) 865-0447_    DIVISION _Corrections_

ADDRESS _4628 28th St._    CITY _Gulfport_    STATE/ZIP _MS 39501_

WEAPON MAKE _Ruger_    MODEL _P-89_    CALIBER _9mm_

SERIAL NO. _310-47507_    BARREL LENGTH _____    ISSUED _____ YES _✓_ NO

TYPE OF COURSE _✓_ 60 ROUND _____ SHOTGUN _____ 30 ROUND _____ TRAINING
                        PASS OR FAIL        PASS OR FAIL        PASS OR FAIL

QUALIFIED _X_ YES _____ NO _47,100_ SCORE    INSTRUCTORS INITIALS _____

REFIRE _____ YES _____ NO _/_ SCORE    COMMENTS _____

_____ INSTRUCTORS INITIALS _____

WEAPON INSPECTED _____ YES _____ NO    COMMENTS _____

_____ BRASS RETURNED _____ YES _____ NO

RANGE SAFETY BRIEFING _____ YES _____ NO    COMMENTS _____

_____

_____ INSTRUCTORS INITIALS _____



*100*

# HARRISON COUNTY SHERIFF'S DEPARTMENT
## FIREARMS QUALIFICATION/RANGE TRAINING

DATE: _12-02-97_ TIME IN: _1030_    TIME OUT: _1000_

LAST NAME _TAYLOR_    FIRST NAME _PHIL_    MI _L_

SSN _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_    PHONE _865-0447_    DIVISION _JAIL_

ADDRESS _1628 38TH ST_ CITY _GULFPORT_    STATE/ZIP _MS 39501_

WEAPON MAKE _RUGER_    MODEL _P89_    CALIBRE _9mm_

SERIAL NO. _310-47502_ BARREL LENGTH _____ ISSUED _____ YES _✓_ NO

TYPE OF COURSE _____ 60 ROUND _✓_ 50 ROUND _____ 30 ROUND _____ TRAINING
225/300          190/250          112/150

QUALIFIED _✓_ YES _____ NO _235_ SCORE    INSTRUCTORS INITIALS _____

REFIRE _____ YES _____ NO _____ SCORE    COMMENTS _____

_____ INSTRUCTORS INITIALS _____

WEAPON INSPECTED _____ YES _____ NO    COMMENTS _____

_____ BRASS RETURNED _____ YES _____ NO

RANGE SAFETY BRIEFING _____ YES _____ NO    COMMENTS _____

_____

_____ INSTRUCTORS INITIALS _____

Taylor, Phil  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  Division _SAIL_  Score _____  Date _11-20-96_

(✓) 31047507      Ruger  P89        9mm      Issued no    Qual. ✓Y ( )N ( )Trn 227

( ) AAT2236        S/W  19-5      357    Issued          Qual. ( )Y ( )N ( )Trn  250

( ) AAT2236        S/W  19-5      357    Issued no    Qual. ( )Y ( )N ( )Trn      50
                                                                                RP

4628 28th St. Gulfport 39501        (601)-865-0447





## HARRISON COUNTY SHERIFF'S DEPARTMENT
## FIREARMS QUALIFICATION/RANGE TRAINING

DATE: 3-4-96

LAST NAME TAYLOR        FIRST NAME PHIL        MI LEN

SSN 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        PHONE (601) 865-0447    DIVISION JAIL

ADDRESS 4628 28TH ST.    CITY GULFPORT        STATE/ZIP MS. 39501

WEAPON MAKE RUGER#        MODEL P-89            CALIBRE 9mm

SERIAL NO. 310-47507    ~~BARREL LENGTH 3 1/4~~    ISSUED ___ YES ✓ NO

TYPE OF COURSE ___ 60 ROUND ✓ 50 ROUND ___ 30 ROUND ___ TRAINING
                    225/300        190/250        112/150

QUALIFIED 210 (YES) ___ NO ___ SCORE    INSTRUCTORS INITIALS (MW)

REFIRE ___ YES ___ NO ___ SCORE    COMMENTS _____

_____ INSTRUCTORS INITIALS _____

WEAPON INSPECTED ___ YES ___ NO    COMMENTS _____

_____ BRASS RETURNED ___ YES ___ NO

RANGE SAFETY BRIEFING ___ YES ___ NO    COMMENTS _____

_____ INSTRUCTORS INITIALS _____

DK

## HARRISON COUNTY SHERIFF'S DEPARTMENT
### FIREARMS QUALIFICATION/RANGE TRAINING

DATE: _12-11-95_

LAST NAME _TAYLOR_    FIRST NAME _PHIL_    MI _____

SSN _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_ PHONE _865-0447_ DIVISION _JAIL_

ADDRESS _4628-28th St._ CITY _Gpt, MS_    STATE/ZIP _39501_

WEAPON MAKE _S/W_    MODEL _19-5_    CALIBRE _357_

SERIAL NO. _AAT 2236_ BARREL LENGTH _4"_ ISSUED _____ YES _✓_ NO

TYPE OF COURSE _✓_ 60 ROUND _____ 50 ROUND _____ 30 ROUND _____ TRAINING
                   225/300          190/250          112/150

QUALIFIED _✓_ YES _____ NO _275_ SCORE    INSTRUCTORS INITIALS _SPS_

REFIRE _____ YES _____ NO _____ SCORE    COMMENTS _____

_____ INSTRUCTORS INITIALS _____

WEAPON INSPECTED _____ YES _____ NO    COMMENTS _____

_____ BRASS RETURNED _____ YES _____ NO

RANGE SAFETY BRIEFING _____ YES _____ NO    COMMENTS _____

_____ INSTRUCTORS INITIALS _____



HARRISON COUNTY SHERIFF'S DEPARTMENT
FIREARMS QUALIFICATION/RANGE TRAINING

DATE: 09-12-95

LAST NAME TAYLOR          FIRST NAME PHIL          MI L

SSN 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     PHONE (601) 865-0447   DIVISION HCDF

ADDRESS 4628 28TH ST.   CITY GULFPORT   STATE/ZIP Ms. 39501

WEAPON MAKE Smith/Wesson   MODEL 19-5   CALIBRE 357

SERIAL NO. AAT2236   BARREL LENGTH 4"   ISSUED ____ YES ✓ NO

TYPE OF COURSE  ✓   60 ROUND      ____ 50 ROUND      ____ 30 ROUND      ____ TRAINING
                     225/300           190/250           112/150

QUALIFIED ✓ YES   ____ NO 281 SCORE   INSTRUCTORS INITIALS JP

REFIRE ____ YES ____ NO ____ SCORE   COMMENTS _____

_____ INSTRUCTORS INITIALS _____

WEAPON INSPECTED ____ YES ____ NO   COMMENTS _____

_____ BRASS RETURNED ____ YES ____ NO

RANGE SAFETY BRIEFING ____ YES ____ NO   COMMENTS _____

_____ INSTRUCTORS INITIALS _____

44

## FIREARMS QUALIFICATION

TODAYS DATE  *04-11-95*

LAST NAME  *TAYLOR*

FIRST NAME  *PHIL*                              MI _____

SSN  *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*                    UNIT NO _____

PHONE # _____                        DIVISION  *JAIL*

WEAPON MAKE  *S/W*                    MODEL  *19*

CALIBRE  *357*           BARREL LENGTH  *4" P*

S/N  *AAT 2236*

TYPE OF COURSE  *TRAINING (TRANSITIONAL)*

*150*
QUALIFIED/UNQUALIFIED   BRASS RETURNED: YES/NO   INSTRUCTORS INITIALS  *LRS*

REFIRES _____

COMMENTS _____

WEAPON INSPECTED  YES/NO   COMMENTS _____
_____

RANGE SAFETY BRIEFING  YES/NO  COMMENTS _____
_____

*DL*

√4

## FIREARMS QUALIFICATION

TODAYS DATE  _03-14-93_

LAST NAME  _TAYLOR_

FIRST NAME  _PHIL_ MI _____

SSN  _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_ UNIT NO _____

PHONE #  _____ DIVISION _JAIL_

WEAPON MAKE  _S/W_ MODEL _19-5_

CALIBRE  _.357_ BARRELL LENGTH _4" P_

S/N _AAT 2236_

TYPE OF COURSE _60RD._

_278_
QUALIFIED/UNQUALIFIED  BRASS RETURNED: YES/NO  INSTRUCTORS INITIALS _ERS_

REFIRES  _____

COMMENTS  _____

WEAPON INSPECTED YES/NO  COMMENTS _____

RANGE SAFETY BRIEFING YES/NO COMMENTS _____

## FIREARMS QUALIFICATION

TODAYS DATE _____ 1-24-95 _____

LAST NAME _____ TAYLOR _____

FIRST NAME _____ PHIL _____ NMI _____

SSN _____ 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 _____ UNIT NO _____ 344 _____

PHONE # _____ DIVISION _____ JAIL _____

WEAPON MAKE _____ SW _____ MODEL _____ 19 _____

CALIBRE _____ 357 _____ BARREL LENGTH _____ 4" _____

S/N _____ AAT 2236 _____

TYPE OF COURSE _____ PHASE I + II _____

QUALIFIED/UNQUALIFIED  BRASS RETURNED: (YES)/NO  INSTRUCTORS INITIALS (M)

REFIRES _____ DRAW _____ REACTION

COMMENTS _____ 3.18  1.90  1.90 _____ .67, 76, 89

WEAPON INSPECTED YES/NO  COMMENTS _____

_____

RANGE SAFETY BRIEFING YES/NO COMMENTS _____

_____

# HARRISON COUNTY SHERIFF'S DEPARTMENT



**JOE PRICE,** *Sheriff*

601-865-7060
601-865-7095

PERSONNEL ORDER NUMBER: 94-99

DATE: JUNE 29, 1994

INDEX AS: EMPLOYMENT

---

SUBJECT: DEPUTY PHIL LEN TAYLOR - FULL TIME EMPLOYMENT - HARRISON
COUNTY SHERIFF'S DEPARTMENT - JAIL DIVISION

Be advised that DEPUTY PHIL TAYLOR is employed by the Harrison County
Sheriff's Department Jail Division on a full time basis. Deputy Taylor's
badge number shall be 344; his monthly shall be as indicated and shall
serve a 60 day probation/evaluation period.

Deputy Taylor shall report directly to Captain Rick Gaston for job
assignment and duty responsibilities.

This Order effective July 9, 1994.


JOE PRICE
SHERIFF
HARRISON COUNTY, MISSISSIPPI

JP/nk

cc:  Administrative Master File
     Personnel File
     Major E.R. Cook
     Captain Melvin Brisolara
     Captain Rick Gaston
     Captain Bruce Carver
     Captain Farley E. Rhodes
     Lieutenant Rupert Lacy
     Sergeant Walter Pitts
     Sergeant Tom Timmons
     Sheriff's Personnel Records Officer

P.O. BOX 1480
GULFPORT, MISSISSIPPI 39502



**TASER® X26 CERTIFICATION**

PHIL TAYLOR

Certified User

This Certifies that

**Phil Taylor**

is trained in the proper and safe use of the TASER® X26 Conducted Energy Weapon and has passed the requirements of the TASER X26 law enforcement and corrections training program under the supervision of a Certified Instructor. Certification will expire one year from date of signature.

In Witness Whereof, Certified Instructor:

**Rupert H. Lacy**

has certified the successful completion of the training requirements this day:

**February 2, 2006**

Certified Instructor:

Certified Instructor ID:

00060805019141287134CC

© 2004 TASER International, Inc. TASER®, Shaped Pulse™ and the Globe & Lightning Bolt Logo are trademarks of TASER International, Inc.

# AMERICAN CORRECTIONAL ASSOCIATION

4380 FORBES BOULEVARD • LANHAM, MARYLAND 20706-4322
301 • 918 • 1800  FAX 301 • 918 • 1900
WWW.ACA.ORG

June 17, 2005

Phil L. Taylor
Harrison Cty, Attn: Paula Hentges
10451 Larkins Smith Drive
Gulfport, MS 39503-4615

Dear Mr. Taylor:

Congratulations on your successful completion of the American Correctional Association's **Correctional Supervision I Self-Instructional Course.**

Having completed this self-instructional course, you are now eligible to receive continuing education units (CEUs) from University of Maryland, College Park. If you would like to receive CEUs, complete the enclosed registration form and mail it to the American Correctional Association. Please make out your check or money order to ACA in the amount of $18.00.

Once again, I commend your efforts and urge you to have a copy of this letter placed in your personnel file. If you have any questions or need additional information, please call the Professional Development staff at (301) 918-1861.

Sincerely,

William W. Sondervan, Ed.D., CCE
Director
Professional Development

Participant ID# 10701669

Enclosures

Your Grade(s):

93



# American Correctional Association

ACA FOUNDED 1870

## Certificate of Completion

Presents this

to

### Phil L. Taylor

In Recognition of Your Continued Professional Development
Through the Successful Completion
of The 40 Hour
Correctional Supervision I Self-Instructional Course

June 2005
DATE



DIRECTOR
PROFESSIONAL DEVELOPMENT

EXECUTIVE DIRECTOR

# HARRISON COUNTY SHERIFF'S DEPARTMENT
## TRAINING ATTENDENCE RECORD

_Phil L. Taylor_ ATTENDED A TRAINING CLASS
(NAME)

TITLED _How not to Become a Hostage_

ON _July 15,_ 20 _04_ AND RECEIVED _4.0_

TRAINING CREDIT HOUR (S) / MINUTE (S).

CERTIFIED SIGNATURE: _____

NAME OF CERTIFYING INDIVIDUAL: _____
(PRINT)

# LAW ENFORCEMENT EXECUTIVE DEVELOPMENT ASSOCIATION



*AWARDS THIS CERTIFICATE*

*TO*

*Security Captain Phil L. Taylor*

**For participation in a Seminar on Management of Organizational Change for Law Enforcement Leaders Conducted by Sheriff Malcolm E. McMillin and Hinds County Sheriff's Department-Chief Robert Moore and Jackson Police Department-Hinds County Community College FBI Law Enforcement Executive Development Association Raymond, Mississippi · February 16 - 18, 2004**

*Malcolm E. McMillin*

Sheriff, Hinds County Sheriff's Department

*Tom Stone*

Executive Director, FBI - LEEDA

# HARRISON COUNTY SHERIFF'S DEPARTMENT
## TRAINING DIVISION

ON ___9/11/03___ I DEPUTY ___PHIL L. TAYLOR___ # 151

COMPLETED THE FIRST AID AND CPR COURSE. I HAVE ALSO RECEIVED AND COMPLETED

THE PRACTICAL AND WRITTEN TESTS.


TEST SCORE     PASS / FAIL

PRACTICAL     PASS / FAIL


_____
SIGNATURE


_____
ANTHONY KELLY
HARRISON COUNTY INSTRUCTOR


BOTH TESTS ATTACHED:



Certificate No. D-00743

# STATE OF MISSISSIPPI

Board on Jail Officer Standards and Training

Hereby awards this

## Professional Certificate

TO

### PHIL L. TAYLOR
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

This 17th day of January, 2002

As being qualified to be a Mississippi Detention Officer under
Provisions of Chapter 482, General Laws of Mississippi, 1999.

Director
Board on Jail Officer
Standards and Training

Chairman
Board on Jail Officer
Standards and Training

# HARRISON COUNTY
# SHERIFF'S DEPARTMENT

*George H. Payne, Jr.*
Sheriff

Post Office Box 1480
Gulfport, Mississippi 39502

**SPECIAL ORDER NUMBER:** 03-048

DATE: JANUARY 28, 2003

INDEXED AS: SPECIAL ASSIGNMENT

SUBJECT: HARRISON COUNTY CORRECTIONAL OFFICERS 40 HOUR PRE-
SERVICE TRAINING

TO: CAPT. TAYLOR

You have been scheduled to instruct for the above reference training, February 3 & 4,
2003 at the Multi-Purpose room at the ADC.

Attached you will find an agenda with the dates, times and subjects you will be
responsible for.

This Order effective February 3, 2003.

George H. Payne, Jr.
Sheriff

GHP:ds

Cc: Major Riley
OIC Campbell
Personnel File
~~Captain Lacy~~

Office: (228) 865-7092              Fax: (228) 865-7071              Dispatch: (228) 865-7060