IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JAMES T. FARROW**                                                                                                **PLAINTIFF**

**VERSUS**                                                        **CIVIL ACTION NO.  1:05cv326-LG-JMR**

**GEORGE PAYNE, JR., DIANE G. RILEY,**
**WAYNE PAYNE, PHIL TAYLOR and JOHN DOES**                                    **DEFENDANTS**
_____

## REPORT AND RECOMMENDATION

This matter is before the Court pursuant to Defendants' Motion [73-1] for Summary Judgment which is accompanied by a Memorandum [79-1] in Support.  Plaintiff has filed a Response [86-1] in Opposition, to which Defendants have submitted a Rebuttal [87-1].  The Court being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, finds that the Defendant's Motion [73-1]  for Summary Judgment should be granted.

## STATMENT OF THE CASE

Plaintiff James T. Farrow ("Farrow")  filed this *pro se* Complaint on July 01, 2005, alleging violations of his civil rights, pursuant to 42 U.S.C. § 1983, while being held as a pretrial detainee in the Harrison County Adult Detention Center ("HCADC").  Pursuant to this Court's Order [6-1], Farrow filed his First Amendment to Original Complaint [7-1] adding Failure to Train/Supervise claims against the following individuals: Captain Philip Taylor ("Taylor"), Major Diane Gaston-Riley ("Riley"), Major Wayne Payne ("W. Payne") and Sheriff George Payne ("G. Payne"). Specifically, Farrow alleges that he was subjected to excessive force in violation of his rights under the Fourteenth Amendment Due Process Clause, and that  Defendants Taylor, Riley, W. Payne, and G. Payne are liable for failing to exercise adequate supervision over the subordinate officers that

effectuated the assault on Farrow. The Court emphasizes that only Plaintiff's supervisory liability claims are addressed by Defendants' Motion [73-1] for Summary Judgment. The Court has previously granted Plaintiff's Motion [84-1] to Amend Complaint to add the names of John Does as defendants. These new claims are not presently before the Court.

On or about September 7, 2004, Farrow was arrested for the sale of cocaine and incarcerated as a pretrial detainee at the HCADC. In the early morning hours of September 16, 2004, Farrow and other inmates were subjected to a "shakedown" of the area in which they were being housed. *See* Exhibit "2" attached to Motion [73-4]. During the search, Farrow and the other inmates were requested to face the wall with their hands on top of their heads. Farrow allegedly refused to comply with the officers' requests, and he was subsequently involved in an altercation with the officers. *Id.*

Farrow alleges that he was beaten and kicked during the altercation. *Id.* Specifically, Farrow alleges that the beatings continued after he had been handcuffed and restrained. Farrow further alleges that, during the struggle, officers pulled down his panted and sprayed his genitals with pepper spray. *Id; see also* Complaint. After Farrow was restrained, the officers transferred Farrow to lock-down. Farrow alleges that the officers continued to beat him during the transfer, and that two officers rammed his head into a metal door in order to open it. Farrow further alleges that he was rendered unconscious from the beating. *See* Complaint.

Following the altercation, Farrow was transported to receive medical attention for injuries sustained to his eye. The nurse on duty noted that Farrow's eye was swollen shut and suffered a jagged laceration along his eye brow. *See* Exhibit "B-1" attached to Response [86-2]. The nurse was unable to determine whether or not Farrow lost consciousness during the altercation. *See* Exhibit "B-3" attached to Response [86-2].

On September 21, 2004, G. Payne requested that Captain Steve Campbell ("Campbell")

conduct an internal investigation into Farrow's allegations of excessive force. *See* Exhibit "2" attached to Document [73-4].   During his investigation, Campbell reviewed numerous reports by HCADC officers concerning the altercation with Farrow. *Id.*   According to a report received from Defendant Taylor, Officer Annie Kelly had stated to Taylor that she observed officers striking Farrow numerous times after he had been restrained with handcuffs. *Id.*  Additionally, Taylor's report stated that three inmates, Freddie Farley, Charles Manning, and Samuel Miley, had witnessed Farrow being drug down the hallway by Deputies Jerrod Necaise ("Necaise") and Ryan Teel ("Teel").  The inmates stated that Teel and Necaise were striking and kneeing Farrow, and confirmed that Farrow's head had been rammed into a door. *Id.*

Campbell interviewed inmate Freddie Fairley regarding the alleged assault on Farrow. *Id.* Fairley stated that  Farrow had failed to comply with officers orders during the "shakedown," and this instigated the assault.  Fairley claimed to have witnessed two officers drag Farrow down the hall, ram his head into a door, and then drop him on his face.  However, Fairley's version of the alleged events did not fit the time line in which the altercation actually transpired. *Id.*  According to Campbell's investigative report,  Fairley later recanted his version of the events, and specifically denied that the officers rammed Farrow into the door and dropped him face-first on to the floor. *Id.*

Campbell then interview Deputy Preston Willis ("Willis") regarding the altercation between Farrow and the HCADC officers. *Id.*   Willis stated that Farrow refused to comply with  Necaise's commands, and that they got into a struggle and both fell to the floor. *Id.*   Willis stated that he believed that Farrow hit his head on the steel bunks when he and Necaise fell. *Id.*  Willis stated that he attempted to restrain Farrow, and during the struggle he accidentally pulled Farrow's pants down. *Id.*   Willis specifically denied seeing any officer punch or kick Farrow, and further denied that any pepper spray was used during the altercation. *Id.*

Campbell interviewed inmate Charles Manning ("Manning") in regards to Manning's allegations that he witnessed excessive force being used against Farrow. *Id.* Manning stated that he witnessed two officers ram Farrow's head in to a metal door and then drop him on his face. *Id.* However, like inmate Fairley, Manning later recanted his version of the altercation. *Id.*

Campbell interviewed Deputy Carl Stoltz ("Stoltz") about the altercation involving Farrow. Stoltz stated that he did not participate in the event, but noted that he did not witness any officers hitting or striking Farrow. *Id.*

Next, Campbell interviewed Office Annie Kelly ("Kelly"). Kelly stated that she was involved in the altercation with Farrow, and that he was resisting the officers' attempts to restrain him. *Id.* She stated that the officers did strike Farrow in order to subdue him, but that no excessive force was used. However, Kelly recanted her previous statement to Captain Taylor that Farrow was struck by officers after he was restrained. Kelly further denied that pepper spray was deployed during the altercation. *Id.*

In the following days, Campbell interviewed Sergeant Ryan Mathis ("Mathis") and Deputies Mark Lawson ("Lawson") and Jeff Brawner ("Brawner") regarding the incident. *Id.* Brawner, Mathis and Lawson all denied that unnecessary force was used against Farrow. Additionally, neither officer observed pepper spray being deployed against Farrow. *Id.*

Campbell then interviewed Deputy Teel regarding his role in the altercation with Farrow. *Id.* Teel stated that he witnessed Farrow struggling on the floor with Deputy Necaise, and that he went over to assist in restraining Farrow. Teel stated that he witnessed one officer strike Farrow in the leg with his knee in order to subdue him, but that no unnecessary force was employed. Furthermore, Teel denied ramming Farrow's head in to a door or dropping him on to the floor on his face. *Id.*

Next, Campbell interviewed Deputy Necaise as to his role in the altercation with Farrow. Necaise stated that Farrow refused to comply with orders during the "shakedown," and that Farrow struggled with him when he attempted to place Farrow in handcuffs. *Id.* Necaise further stated the during the struggle he fell to the floor on top of Farrow, but denied that any officer struck or hit Farrow during the struggle. *Id.* Necaise denied that he rammed Farrow's head in to a door or dropped him on his face. *Id.* Finally, Necaise denied that pepper spray was employed during the altercation. *Id.*

At the conclusion of his investigation, Campbell found Farrow's allegations of excessive force to be unfounded. *Id.* Campbell noted that the evidence indicated that Farrow was resistant to the officers' efforts to subdue him, but that none of the officers that he interviewed reported the use of unnecessary force against Farrow. Campbell opined that Farrow fell during the struggle, and that the fall was the likely source of the injury to his eye. *Id.* Further, Campbell found no evidence that Farrow was sprayed with pepper spray. *Id.*

Farrow's Complaint alleges that the HCADC officers used excessive force during the altercation. Additionally, Farrow claims that it was the policy of the HCADC to allow officers to routinely use excessive force in handling detainees within the facility. *See* Response [86-1]. Furthermore, Farrow alleges that the Defendants' inadequate training and supervision of the subordinate officers allowed this unspoken policy to continue unabated, and as such, constituted deliberate indifference to the health and safety of detainees at the HCADC. *Id.*

## **STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P.

56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987). "The requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion. *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986). To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact. *See Howard*, 783 F.2d at 1315.

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights. Therefore, section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States. *White v. Thomas*, 660 F. 2d 680, 693 (5th Cir. 1981). A plaintiff cannot succeed merely by showing any deprivation of his rights. Section 1983 was intended to protect rights protected by federal law. *Karmi-Panahi v. Los Angles Police Dept.*, 839

F. 2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985).

## **ANALYSIS**

Defendants argue that they are entitled to summary judgment on both Farrow's individual and official capacity claims. [1]  In their Motion for Summary Judgment [73-1], Defendants contend that Farrow's official capacity claims against them are, in reality, claims against the Harrison County Adult Correctional Center.  Thus, since the HCADC is a local governmental entity, Farrow must demonstrate that his claims are actionable under the United States Supreme Court's jurisprudence regarding municipal liability under section 1983.  Defendants also assert that Farrow's individual capacity claims are subject to the defense of qualified immunity because Defendants' conduct was objectively reasonable and Defendants were acting within the scope of their discretionary authority at all relevant times.

Under 42 U.S.C. § 1983, liability may be imposed upon any person who, acting under the color of state law, deprives another of federally protected rights.  It neither provides a general remedy for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of all who suffer injury at the hands of the state or its officers.  Municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978).  *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such reading.  *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403

---

[1] The Court notes that Farrow does not specify whether his claims are against Defendants in their individual capacities, their official capacities, or both.  Because *pro se* complaints must be construed liberally, the Court will interpret  Farrow's Complaint to allege claims against Defendants in both their individual and official capacities.  *See Williams v. Love,*  2006 WL 1581908, *5 (S.D.Tex. 2006).

(1997). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The three requirements for municipal liability outlined in *Piotrowski* are necessary in order to distinguish between individual violations by local employees and those that can be fairly attributed to conduct by the governmental entity itself. *See Piotrowski*, 237 F.3d at 578-79. The United States Supreme Court has clearly emphasized the necessity of an official policy as a predicate to recovery under a theory of municipal liability:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 695. Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official policy or custom. *Piotrowski*, 237 F.3d at 578.

In addition, not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *Id.* at 580; *See Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right."). Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264.

The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *Peters v. City of Biloxi*, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999). *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (Stating that these two requirements "must not be diluted").

Farrow's Complaint asserts that Defendants are liable under section 1983 by and through their employment with the Harrison County Adult Correction Facility. The Court notes that Farrow's official capacity claims against the defendants are, in reality, a claim against the offices which each occupied at the time of the alleged incidents and, ultimately, Harrison County. To the extent Farrow brings this action against Defendants in their official capacity, he must establish a constitutional violation, and in addition must satisfy the requirements necessary to impose municipal liability.

"Supervisory officers cannot be held liable under Section 1983 for the actions of subordinates on any theory of vicarious liability." *Hampton v. Oktibbeha County Sheriff Dept.*, 480 F.3d 358, 367 (5th Cir. 2007) (quoting *Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir. 1985)). Instead. counties and supervisors are liable for the constitutional violations committed by county employees only when those violations result directly from a municipal custom or policy. *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000). A municipality's failure to properly train or supervise its employees can be a policy or custom giving rise to § 1983 liability. *See City of Canton, Ohio v. Harris,* 489 U.S. 387, 387 (1988). Therefore, Farrow must prove that: (1) the training procedures of the municipality's policymaker were inadequate; (2) the municipality's policymaker was deliberately indifferent in adopting the training policy, and (3) the inadequate training policy directly caused the constitutional deprivation. *See Baker v. Putnal,* 75 F.3d 190, 200 (5th Cir.1996). Finally, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation

. . . cannot be conclusory; it must contain specific facts.*" Spiller v. City of Tex. City, Police Dept*., 103 F.3d 162, 167 (5th Cir. 1997).

At the outset, the Court notes that Farrow's Complaint alleges sufficient facts that, when viewed in a light most favorable to the nonmoving party, create a genuine issue as to whether he suffered a violation of his constitutional rights. Farrow alleges that the officers of the HCADC used excessive force in restraining him. Further, Farrow presents evidence of injury in the form of medical reports detailing the damage inflicted to his left eye. Conversely, Defendants adamantly deny that any excessive force was employed during the altercation on September 16, 2004. Therefore, Farrow has created a genuine issue of material fact as to whether he suffered a deprivation of constitutional rights.

While Farrow has alleged a violation of his constitutional rights, that fact alone will not permit recovery in an official capacity claim predicated on inadequate training or supervision. Farrow must further prove that the constitutional violation occurred because Defendants failed to train or supervise their employees, and that the inadequate training was the result of an official custom or policy of the HCADC. Farrow alleges that there existed a widespread practice of allowing Officers to abuse the inmates at the HCADC. In support of his allegations that there existed a custom of abusing inmates, Farrow submits evidence that Deputy Ryan Teel, one of the Deputies that allegedly used excessive force against Farrow, was later convicted of civil rights violations that were committed during his employment with the HCADC. *See* Exhibit "A 1 ½" attached to Response [86-2]. Furthermore, Farrow asserts that at least five other HCADC employees pleaded guilty to civil rights violations, including Conspiracy to Deprive Rights Under Color of Law, a violation of 18 U.S.C. § 241. *Id.*

Farrow additionally alleges that Defendants did not properly investigate the accusations of

abuse levied against the subordinate Officers. As evidence to support this allegation, Farrow submits several investigative reports from both inmates and Officers that lend support to his version of the altercation. These investigative reports were drafted by Defendant Taylor and included statements from witnesses to the alleged assault upon Farrow. In one report, Taylor recorded the statements of inmate Fredrick Suttles and inmate Nakieer Montgomery. Both individuals stated that they had witnessed Deputies Teel and Necaise striking Farrow while handcuffed. *See* Exhibit "A-7" attached to Response [86-2]. However, neither Suttles nor Montgomery were interviewed by Steven Campbell and their accounts of the altercation were not included in the final investigation report. *See* Exhibit "2" attached to Motion [73-4]. Finally, Farrow includes an Incident Report filed by Field Training Officer Annie Kelly. In the report, Kelly stated that she witnessed Officers continue to strike Farrow after he had been restrained. *See* Exhibit "A-9" attached to Response [86-2]. However, this account is substantially dissimilar to the account that Kelly gave Campbell in the Internal Investigation Report. *See* Exhibit "2" attached to Motion [73-4].

    In response, Defendants argue that there was sufficient training for all employees at the HCADC, and that a chain of command was employed to ensure adequate supervision over the subordinate Officers. First, the Defendants argue that the HCADC has an appropriate, written use-of-force policy. *See* Exhibit "A" attached to Motion [73-3]. Additionally, Defendants assert that the HDADC maintains a training program and training coordinator to ensure appropriate training for all employees. *See* Exhibit "B" attached to Motion [73-3]. Newly hired officers are required to complete a forty hour training program by state certified officers prior to employment. Further, employees are required to receive an additional eighty hours of instructional training, as well as period "refresher" training throughout the course of employment. *See* Exhibit "14" attached to Motion [73-3]. Finally, the HCADC has an established Professional Standards Unit that conducts internal administrative

investigations. *See* Exhibit "C" attached to Motion [73-3].

Ordinarily, to impose liability for failure to train, "the [plaintiff's] focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). In particular, there must be specific allegations as to how a particular training program is defective. *Id.* While Farrow offers evidence that he suffered abuse at the hands of HCADC Officers, he makes no specific allegations as to how the training and supervision program at the HCADC was inadequate or defective. For instance, Farrow asserts that Defendants do not have an appropriate, written use-of-force policy. However, Farrow fails to elaborate on this statement and presents no specific allegations as to how the HCADC's policy is inappropriate.

In response, the Defendants provided evidence that all HCADC employees receive extensive training and are required to adhere to the facility's official use-of-force policy. Farrow fails to present any evidence to contradict the Defendants' assertions that the training and supervision of HCADC was adequate. Instead, Farrow contends that the subsequent arrests of several HCADC Officers for civil rights violations proves that the HCADC's supervision and training were inadequate. However, the Court notes that these arrests were for an unrelated event that occurred more than a year after Farrow's altercation. Farrow fails to provide any evidence that inmates were being abused on or prior to September 16, 2004.

In addition to proving that Defendants inadequately trained and supervised the HCADC employees, Farrow is required to prove that the inadequate training resulted directly from a municipal custom or policy. *See Conner*, 209 F.3d at 796. However, Farrow presents no evidence of an official HCADC policy that caused the allegedly inadequate training and supervision of the facility's employees. Instead, Farrow simply makes a conclusory allegation that the Defendants had a policy

which condoned or permitted abuse of the inmates at the HCADC. In support of this assertion, Farrow argues that there is no evidence that Defendants ever disciplined the staff for inmate abuse. However, Farrow has offered no evidence of actual abuse that occurred in the HCADC prior to his present claim. Furthermore, an investigation was conducted concerning Farrow's claims of abuse, and his allegations were determined to be unfounded. The Court finds that Farrow's bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation.

Based on the evidence of record, the Court finds that Farrow has failed to prove the existence of a genuine issue as to whether there existed an official policy or custom of inadequately training or supervising the employees of the HCADC.

Assuming, *arguendo*, that Farrow could prove the existence of an official policy that resulted in inadequate training or supervision, the Court finds that Defendants would still be entitled to summary judgment as to Farrow's official capacity claims because he cannot prove that the Defendants' failure to adequately train or supervise amounted to deliberate indifference. "Deliberate indifference . . . [requires] proof that a municipal actor disregarded a known or obvious consequence of his action." *Estate of Davis ex rel McCully*, 406 F.3d at 381. To establish deliberate indifference, a plaintiff must prove that a defendant acted with more than negligence or even gross negligence. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Furthermore, a plaintiff must ordinarily demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and likely to result in a constitutional violation.'" *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (quoting *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001).

Farrow's proffered evidence is legally insufficient to establish that Defendants were aware that the training and supervision of the HCADC employees was inadequate and likely to result in a

constitutional violations. Farrow argues that the subsequent arrest of several HCADC Officers for civil rights violations establishes that Defendants were deliberately indifferent. However, the Court notes that Farrow's claim stems from an incident that occurred more than a year before the arrests. Farrow offers no evidence of civil rights violations that occurred prior to September 16, 2004. The Court finds that, absent some evidence of a pattern of prior violations, Farrow has failed to prove that Defendants were aware that he faced a substantial risk of harm.

Furthermore, Farrow's allegation that the HCADC conducted an improper investigation is legally insufficient to constitute deliberate indifference. Although Farrow argues that some potential witnesses were not interviewed, the record indicates that Defendants conducted a thorough investigation into Farrow's claims that he was subjected to excessive force. The mere fact that the investigation was not performed flawlessly provides no evidence of deliberate indifference. At best, Farrow's assertions amount to an isolated incident of negligent conduct, which, by itself, is insufficient to support the instant official capacity claims against Defendants.

Based on the foregoing analysis, the Court finds that Farrow's Complaint fails to establish that a policy or custom on the part of the HCADC was the moving force behind any alleged constitutional violations. Furthermore, this Court finds that Farrow's allegations do not indicate that he faced a substantial risk of serious harm to which Defendants responded with deliberate indifference. Thus, there exists no basis for Farrow's claims against the Defendants in their official capacities.

Farrow's Complaint additionally asserts claims against Defendants in their individual capacities. However, because Defendants are law enforcement officials, they are entitled to the defense of qualified immunity. *See Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986). In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert v. Gilly*, 500

U.S. 226, 231 (1991). If a violation of a right has been alleged, then it must be determined whether the defendant's conduct was objectively reasonable. Even if the conduct violates a constitutional right, qualified immunity is applicable if the conduct was objectively reasonable. *Hare v. City of Corinth, Miss*, 135 F.3d 320, 327 (5th Cir. 1998).

As discussed above, the Court finds that Farrow has alleged sufficient facts to create a genuine issue as to whether he was subjected to excessive force at the hands of HCADC employees. Therefore, the Court must determine whether Defendants' conduct was objectively reasonable in light of clearly established law at that time. *Salas v. Carpenter*, 980 F.2d 299, 305-306 (5th Cir. 1992). Objective reasonableness analysis focuses on whether a reasonable person would have believed his conduct was constitutional in light of the information available to him and the clearly established law. *See Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001). Under this standard, even officials who reasonably but mistakenly violate the Constitution are entitled to immunity. *Id.*

Farrow alleges that Defendants failed to provide reasonable training and supervision to the subordinate employees of the HCADC, and, as a result, inmate abuse was commonplace. As evidence to support these allegations, Farrow submits that several Officers were convicted of or pleaded guilty to civil rights violations that occurred within the facility. Additionally, Farrow argues that Defendants failed to properly investigate claims of excessive force and inmate abuse, thereby permitting the abuses to continue unabated.

The Court finds that Farrow has failed to create a genuine issue as to whether Defendants acted unreasonably. To impose liability for failure to train, "the [plaintiff's] focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Roberts*, 397 F.3d at 293. In particular, there must be specific allegations as to how a particular training program is defective. *Id.* Farrow does not set forth specific allegations as to how Defendants

were unreasonable in their training and supervising methods. In fact, Farrow's only specific allegation against the Defendants is that the HCADC does not have a written use of force policy. However, the Defendants have rebutted this allegation by providing evidence that the HCADC has a written use of force policy by which all Officers must abide. *See* Exhibit "A" attached to Motion [73-3]. Moreover, Defendants have provided a number of exhibits illustrating the numerous training requirements that prospective employees must complete before being allowed to work at the HCADC. Farrow has neither disputed these requirements nor indicated how they are defective or inadequate.

Furthermore, Farrow has failed to offer any probative evidence that Defendants failed to reasonably train and supervise the employees of the HCADC. Farrow attempts to prove unreasonable supervision by citing the subsequent conviction of several HCADC Officers for civil rights violations. However, these charges stemmed from an unrelated event that occurred more than a year after Farrow's current claims arose. The Court finds that this evidence is simply too remote in time to be probative of the training and supervision provided by Defendants on or before September 16, 2004, the date that Farrow was allegedly abused.

Finally, Farrow's disagreement with the investigation which Defendants conducted provides no evidence that Defendants acted unreasonably. Although Defendants did not investigate every potential witness, the record reflects that the investigation into Farrow's claims was both thorough and professional. Farrow provides the accounts of two inmate witnesses that support his version of the events. It appears that these potential witnesses were not included in the Internal Investigation Report. However, three other inmate witnesses were interviewed regarding their complaints that excessive force was used against Farrow, and each potential witness admitted to fabricating their previous statements. The Court finds that, given questionable nature of the preceding three inmate

witnesses, the Defendants acted reasonably in choosing not to interview the remaining two inmate witnesses.

Farrow also includes a written report from Officer Annie Kelly stating that she witnessed Officers strike Farrow after he had been restrained. However, in her official version contained with the Internal Investigation Report, Kelly recanted her previous statement. While this recantation is certainly suspicious, it is not probative on the issue of whether Defendants provided unreasonable supervision or training. There is no merit to this argument.

In the case at hand, the Court finds that Farrow has failed to establish any unreasonable conduct on behalf of the Defendants. Thus, Defendants are entitled to qualified immunity as to Farrow's individual capacity claims.

The Court reemphasizes that only Plaintiff's supervisory liability claims are addressed by Defendant's Motion [73-1] for Summary Judgment, and thus only Defendants George H. Payne, Jr., Diane Gaston-Riley, Wayne Payne, and Phil Taylor are to be dismissed from this action. The Court has previously granted Plaintiff's Motion [84-1] to Amend Complaint to add the names of John Does who were allegedly responsible for actually perpetrating the assault against Plaintiff. The Court's opinion has no effect on these newly added Defendants.

## CONCLUSION:

Based on the forgoing analysis, the Court is of the opinion that Farrow has failed to meet his burden of demonstrating any genuine issues of material fact which would preclude summary judgment on his § 1983 supervisory liability claims. Therefore, the Court finds that the Defendants' Motion [73-] for Summary Judgment should be granted, and that all claims against George H. Payne, Jr., Diane Gaston-Riley, Wayne Payne, and Phil Taylor should be dismissed with prejudice, both in their individual and official capacities.

In accordance with the Rules of this Court, any party, within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party.  The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United States Auto Ass'n*, 79 F.3d 1425 (5th Cir. 1996).

This the   21st   day of October,  2008.

                                                        s/ John M. Roper
                                    CHIEF UNITED STATES MAGISTRATE JUDGE